UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| HOSKINS OIL COMPANY, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:16-CV-417-JRG-DCP |
| | ) | |
| EQUILON ENTERPRISES, LLC d/b/a | ) | |
| SHELL OIL PRODUCTS US, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court are the following Motions in Limine [Docs. 168, 174, and 180]. Accordingly, the Court has considered the Motions in Limine, and for the following reasons, Defendants' Motions [**Docs. 168, 174, and 180**] are **GRANTED**.

### I.  POSITIONS OF THE PARTIES

The Court will summarize the Motions in the order in which they were filed.

#### A.  Defendants' Motion in Limine Number 5

Defendants move [Doc. 168] the Court to exclude any argument or testimony that they improperly contacted wholesalers and/or Plaintiff's retail sites regarding the pending termination of the WMAs. Defendants state that on February 26, 2015, they sent Plaintiff termination notices for the failure to purchase base volume in 2014. Defendants state that prior to the effective termination date of June 30, 2015, Defendants reached out to Plaintiff's retail stations to ensure that they had plans to transition to new wholesalers so that they would not be left without any fuel.

Defendants argue that such evidence is irrelevant to the Petroleum Marketing Practices Act ("PMPA") claim and that Defendants' decision to terminate Plaintiff's WMAs was made prior to their contact with Plaintiff's retail locations and other wholesalers. Defendants argue that such evidence is irrelevant because their actions occurred after the decision to terminate. Defendants also argue that Plaintiff tried to prosecute claims based on these allegations and that the Court has already dismissed such claims. Defendants further argue that Plaintiff abandoned this theory entirely in its response to Defendants' motion for summary judgment. Finally, Defendants contend that Plaintiff will use the evidence to inflame the jury.

Plaintiff argues [Doc. 206] that the WMAs and Border Agreement were unreasonable, made in bad faith, and constitute an improper and illusory renewal, which is a violation of the PMPA. Plaintiff argues that Defendants preferred larger wholesalers and that communications with larger wholesalers is evidence of bias against Plaintiff. Plaintiff requests that the Court not rule on the issue until trial or until the Court has affirmatively ruled that such evidence cannot form the basis of showing an unreasonable and bad-faith provision of a franchise agreement. Further, Plaintiff seeks exemplary damages, which it argues require a showing of willfulness by Defendants. Plaintiff states that the entirety of communications with larger wholesalers about Plaintiff's business may show that the provisions of the WMAs and Border Agreement executed in May were not reasonable and not made in good faith.

B.  **Defendants' Motion in Limine Number 11**

Defendants request [Doc. 174] that the Court exclude evidence or argument that they were required to act in good faith when terminating Plaintiff's WMA. Defendants argue that such evidence is irrelevant to the issues in this case and that the testimony will likely confuse or mislead the jury. Defendants argue that Plaintiff is attempting to blur the line between a cause of action

for a violation of the covenant of good faith and fair dealing and a cause of action for violating the PMPA. Defendants assert that whether they terminated the agreement in good faith is not relevant to this dispute. Defendants argue that they have not relied on a good-faith defense and that such evidence will confuse or mislead the jurors into believing that good faith is somehow relevant to the claims and defenses at issue at trial.

Plaintiff asserts [Doc. 174] that in its response to the motion for summary judgment, it asserted that the franchise agreements must be reasonable and in good faith. Plaintiff argues that it should not be prohibited from arguing good faith as it relates to the minimum gallon provision of the 2014 WMAs and Border Agreement. Plaintiff requests that if the Court maintains that good faith is not a requirement for a franchisor's termination decision, the Motion be denied to the extent it seeks to exclude argument of good faith being required for a materiality determination when used as a basis for termination. Plaintiff asserts that testimony and evidence regarding good faith are highly relevant and more probative than prejudicial.

### C. Defendants' Motion in Limine No. 16

Defendants request [Doc. 180] that the Court exclude Plaintiff's Exhibit 39, which is an internal email from Manny Payan to other employees of Defendants listing Plaintiff's retail locations and indicating the status of their future transfer to new wholesalers. Defendants assert that the Motion should be granted for the same reasons set forth in its Motion in Limine No. 5.

Plaintiff asserts [Doc. 218] that the provisions of the WMAs must be reasonable and in good faith. Plaintiff argues that evidence of communication between Defendants and large wholesalers and Plaintiff's customers at any time before the effective date of Plaintiff's termination presents an alternative reason for Defendants' actions regarding the WMAs and Border Agreement from which a jury could infer a violation of the PMPA. Plaintiff argues that in the alternative,

3

such evidence shows that Defendants preferred larger wholesalers and had a negative opinion of Plaintiff based on its size and provides an explanation for why Defendants included an unreasonable and bad-faith material provision in the WMAs and Border Agreement with Plaintiff. Further, Plaintiff asserts that it seeks exemplary damages, which require a showing of willfulness. Plaintiff submits that the entirety of communications with larger wholesalers about Plaintiff's business and the fact that many of Plaintiff's customers were reassigned to larger wholesalers as a result of the termination may show that the provisions of the WMAs and the Border Agreement were not reasonable and not made in good faith and were part of a purposeful effort to eliminate Plaintiff in favor of larger wholesalers.

## II.  ANALYSIS

The Court has considered the parties' positions outlined above, and the Court finds Defendants' Motions [**Docs. 168, 174, and 180**] well taken, and they are **GRANTED**.

The Court will first address Defendants' Motions in Limine [Docs. 168 and 180] because they raise the same issue. Specifically, Defendants request that the Court exclude evidence or argument that Defendants contacted other wholesalers with respect to Plaintiff's retail sites pending the termination of the parties' agreements and to exclude the email (Plaintiff's Exhibit No. 36) reflecting the same. Plaintiff argues that the parties' agreements must be reasonable and made in good faith and that such evidence shows bias against Plaintiff. In addition, Plaintiff states that such evidence is relevant to its request for exemplary damages.

In the Court's Memorandum and Order [Doc. 246], the undersigned acknowledged that in the summary judgment filings, Plaintiff argued that the 6.75 million annual minimum gallon requirement set out in the WMAs was unreasonable. The District Judge found "that the annual minimum gallon requirements in the Motiva and SOPUS WMAs were reasonable and of material

significance to the franchise relations." [Doc. 227 at 12]. As previously explained, the primary issue in this case is whether the parties intended to count the contribution by Red Hed Oil Company ("Red Hed") towards Plaintiff's requirement. Thus, the parties must establish what they did, or did not, agree to and whether Defendants properly applied the agreement as the parties intended. Evidence of any alleged bias against Plaintiff is not helpful to the jury in determining whether Defendants misapplied the parties' agreement. Further, the Court finds that the probative value, if any, of such evidence is outweighed by the danger of unfair prejudice and confusion of the issues in this case. With respect to Plaintiff's argument that it must show Defendants' actions were willful in order to obtain exemplary damages, the Court finds that such does not equate to Plaintiff needing to establish Defendants acted with a bad motive. *Eden v. Amoco Oil Co., Inc.*, 741 F. Supp. 1192, 1195 (D. Md. 1990). Accordingly, the Court finds Defendants' Motions in Limine [**Docs. 168 and 180**] well taken, and they are **GRANTED**.

With respect to Defendants' Motion [Doc. 174] that the Court should exclude evidence or testimony that Defendants were required to act in good faith, the Court also finds this request well taken. Plaintiff argues that it should not be prohibited from arguing good faith as it relates to the minimum gallon provision, but the District Judge found "that the annual minimum gallon requirements in the Motiva and SOPUS WMAs were reasonable and of material significance to the franchise relationships." [Doc. 227 at 12]. The District Judge continued that "the parties have framed the crux of this litigation as whether or not the plaintiff purchased 6.75 million gallons" from Defendants. [*Id.*]. Given the crux of this litigation, the Court finds that argument or testimony as to bad faith not relevant. As explained above, the issues in this case are whether Defendants violated the PMPA by not counting Red Hed's contribution towards Plaintiff's requirements, and if so, whether Defendants knew that Red Hed's contribution should have been

5

counted. Finally, the Court finds that even if such argument or testimony were relevant, the danger of unfair prejudice outweighs any probative value.

## III. CONCLUSION

Accordingly, for the reasons discussed above, the Court **GRANTS** Defendants' Motions in Limine [**Docs. 168, 174, and 180**].

**IT IS SO ORDERED.**

ENTER:

Debra C. Poplin
United States Magistrate Judge